Foster Wheeler Energy Corporation, Petitioner *v.* Elizabeth J. Ustonofski, Respondent.

Argued June 6, 1980, before Judges Mencer, Rogers and Craig, sitting as a panel of three.

*Anthony J. Lumbis,* with him *Neil L. Conway, Hourigan, Kluger & Spohrer Associates,* for petitioner.

474

*Thomas J. Sharkey,* with him *Joseph J. Ustynoski,* for respondent.

OPINION BY JUDGE MENCER, August 15, 1980:

Foster Wheeler Energy Corporation (Foster) appeals from an order of the Workmen's Compensation Appeal Board (Board) granting compensation to Elizabeth J. Ustonofski (claimant) for the death of her husband, Lawrence Ustonofski (decedent). We affirm.

On January 15, 1977, decedent suffered a work-related muscle strain in his left groin. Decedent received compensation for the resulting disability and, after returning to work, executed a final receipt. On February 4, 1977, decedent was routinely examined by his personal physician, Dr. Anthony G. Stish. During the examination, decedent informed Dr. Stish that the physician who examined decedent for Foster after his injury had recommended that decedent undergo a bilateral orchiopexy to correct a congenital defect of undescended testis.[1] Dr. Stish conducted his own examination of decedent's left groin and, finding that the area was still tender, referred decedent to a urologist who performed both the orchiopexy and a left inguinal hernioplasty. Shortly after decedent's discharge from the hospital, he began experiencing severe chest pains. After consulting with Dr. Stish, decedent was readmitted to the hospital and, on February 27, 1977, died of an acute pulmonary embolism due to multiple embolic phenomenon and thrombophlebitis. Both the referee and the Board found that decedent's death was causally connected to the work-

_____

[1] It is well settled that the aggravation of a preexisting disease or condition can constitute an injury under The Pennsylvania Workmen's Compensation Act, Act of June 2, 1915, P.L. 736, *as amended,* 77 P.S. §1 et seq. *Lanzarotta v. Workmen's Compensation Appeal Board,* 42 Pa. Commonwealth Ct. 284, 400 A.2d 697 (1979).

related injury decedent sustained on January 15, 1977 and therefore awarded claimant benefits. Foster's appeal to this court followed.

The sole issue on appeal is whether claimant presented substantial competent evidence to show the necessary causal link between decedent's death and his employment. The following testimony by Dr. Stish clearly carries claimant's burden on this issue:

Q. Doctor, when you elicited pain on palpation, was there any pain in the area of the left testicle?

A. That's, exactly, where the pain was.

Q. You have indicated that you knew prior to February 4, 1977, that he had one or two undescended testicles, is that right?

A. That's right.

Q. By history, or otherwise, did you ever know him to have any problem with the undescended testicles—that is, a physical problem— a traumatic problem—other than the inability to have children?

A. No, sir.

Q. Other than the condition of high blood pressure, which you have described, what was Mr. Ustonofski's physical condition, as you know it, as his attending physician before February 4, 1977?

A. I considered him to be in very good health and treated him for a sinus condition, or sinusitis, on several occasions, but nothing more serious than that.

Q. Did you ever know the decedent to have any adverse physical condition so far as his pulmonary condition was concerned, or his cardiovascular condition, other than his high blood pressure?

A. None.

Q. How about his extremities, Doctor?

A. No history of any injury or condition that required any treatment by me.

. . . .

Q. How many undescended testicles were operated on?

A. One.

Q. Which one?

A. The left.

Q. Is that the area where you palpated the decedent when he came to your office on February 4, 1977 and where you elicited pain?

A. Yes.

Q. Did the decedent indicate to you that he had pain in that area, prior to the injury of January 15, 1977?

A. No, sir.

Q. Doctor, do you have a medical opinion, based on reasonable medical certainty, as to whether the operative procedure that you have described, that this patient underwent, February 9, 1977 to February 18, 1977, was causally related to the accident which he suffered on January 15, 1977?

A. I feel that, according to the history that I obtained, and the physical findings of the patient, that I examined on the 4th of February, that it was causally related.

Q. That is, the operative procedure was causally related to the accident of January 15, 1977?

A. Yes, sir.

. . . .

Q. Doctor, do you have a medical opinion, based on reasonable medical certainty, whether

his death was due to, or in any way, causally related to the accident of January 15, 1977?

A. Yes, sir.

Q. What is that opinion?

A. I think, in my opinion, that he suffered the emboli as a result of thrombophlebitis originating in or about the operative site.

Q. When you say 'site', you mean in the left inguinal, or testicle, area; is that what you mean?

A. Yes, sir.

Q. Doctor, Mr. Ustonofski was confined to the Hazleton General Hospital from 2-9-77 to 2-18-77 and from 2-21-77 to 2-27-77. I ask you whether you have a medical opinion as to whether that was causally related to the injury he suffered on January 15, 1977?

A. I do; yes, sir.

Q. What is that opinion?

A. I think that he was admitted to the hospital to be operated on as a result of the injury he sustained on January 15, and the second hospitalization, or the one following the operation, was directly related to what had transpired before, or what had occurred during his first hospitalization.

Similar testimony was elicited on cross-examination by Foster's counsel and the referee. Although Foster presented conflicting medical evidence, the referee, as the ultimate factfinder, resolved this conflict in favor of claimant and thus we are bound by his resolution. *American Refrigerator Equipment Co. v. Workmen's Compensation Appeal Board,* 31 Pa. Commonwealth Ct. 590, 377 A.2d 1007 (1977).

Foster argues, however, that Dr. Stish's testimony was equivocal, ambiguous, and contradictory and

therefore insufficient to support the referee's findings. We disagree.

As the quoted testimony indicates, Dr. Stish unequivocally related decedent's injury to the operation and the cause of death. We also find that Dr. Stish's testimony on cross-examination was neither ambiguous nor inconsistent with his direct testimony. Even if it were contradictory, such testimony would not affect the unequivocality of Dr. Stish's direct testimony but would merely go to the issue of his credibility, an issue for the referee, not this court. *American Refrigerator Equipment Co., supra.*

Accordingly, we enter the following

ORDER

AND Now, this 15th day of August, 1980, the order of the Workmen's Compensation Appeal Board, dated June 11, 1979, is affirmed. Accordingly, it is ordered that judgment be entered in favor of Elizabeth J. Ustonofski and against Foster Wheeler Energy Corporation, in the amount of $199 per week for the period beginning February 27, 1977 and continuing for the duration of claimant's widowhood, subject to reduction when claimant's children, Teresa Ustonofski and Lawrence Ustonofski, reach the age of 18, together with interest at the rate of 10 percent per annum on deferred payments of compensation from the date due to the date paid, all within the terms and limits of The Pennsylvania Workmen's Compensation Act.

In addition, Foster Wheeler Energy Corporation is directed to reimburse claimant in the amount of $1,500 for the burial expenses of her husband.

Finally, Foster Wheeler Energy Corporation is directed to pay approved attorney's fee, in the amount of 20 percent of the compensation awarded claimant, directly to claimant's counsel, Joseph J. Ustynoski, Esquire.